IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MIGUEL E. DIAZ,   No. CIV S-07-0020-WBS-CMK-P

    Plaintiff,

  vs.   FINDINGS AND RECOMMENDATIONS

D.K. SISTO, et al.,

    Defendants.

_____/

    Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is Defendants' motion to dismiss Plaintiff's complaint (Doc. 57). Plaintiff filed a late opposition (Doc. 63).

    Defendants bring this motion to dismiss on the grounds that Plaintiff failed to exhaust his administrative remedies, fails to state a claim, his request for injunctive relieve is subsumed by Plata v. Schwarzenegger, No. C-01-1351 (N.D. Cal.), and some claims are barred by the Eleventh Amendment.

/ / /

/ / /

/ / /

1

# I. BACKGROUND

On screening, the court found Plaintiff's allegations to be confusing, vague, and conclusory. However, reading the complaint broadly, as required, the court found the complaint appeared to allege a claim for deliberate indifference to a serious medical condition, in violation of the Eighth Amendment, for the Defendants' refusal to provide him with insulin, and that Defendants' refusal to provide him insulin was a result of racial discrimination and retaliation. The court therefore authorized service for several defendants, and dismissed other defendants whom Plaintiff failed to allege any claims against.

# II. MOTION TO DISMISS

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain

"enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

A motion to dismiss based on a prisoner's failure to exhaust administrative remedies is properly the subject of an unenumerated motion under Federal Rule of Civil Procedure 12(b). See Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). "In deciding a motion to dismiss for failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Id. at 1119-20. Where the court looks beyond the pleadings to a factual record in deciding the motion to dismiss, which is "a procedure closely analogous to summary judgment," the court must assure that the plaintiff has fair notice of his opportunity to develop a record. Id. at 1120 n.14 (referencing the notice requirements outlined in Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc), and Klingele v. Eikenberry, 849 F.2d

409 (9th Cir. 1988). Defendants bear the burden of establishing that the plaintiff failed to exhaust administrative remedies prior to filing suit. See Wyatt, 315 F.3d at 1120. If the court concludes that administrative remedies have not been exhausted, the unexhausted claim should be dismissed without prejudice. See id. at 1120; see also Jones v. Bock, 549 U.S. 199 (2007).

## III. DISCUSSION

### A. FAILURE TO EXHAUST

Defendants first argue that Plaintiff failed to exhausted his administrative remedies prior to filing this action. The issues raised in Plaintiff's complaint relate to his medical treatment and receiving his insulin. Defendants argue that Plaintiff has filed several inmate appeals, but none of his inmate grievances addressing insulin were exhausted prior to February 20, 2007. Defendants submitted several responses to Plaintiff's inmate grievances from the first and second level, but only one was exhausted at the third level (Log # CSP-S-07-00417). However, that appeal was not exhausted until after this action had been filed.[1]

Plaintiff responds to this issue by stating that in all of his experience, no inmate grievance has ever been granted and that he has been filing inmate grievances for six years. He also states: "I try informally first otherwise the appeals coordinator denies the 602. Then wait for time to apss [sic] and ask again then 602, then wait again and in the mean time I get no meds and/or insulin or food is denied to me !!" (Opposition, Doc. 63, at 4).

Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit. See 42 U.S.C. § 1997e(a). This requirement is mandatory regardless of the relief sought. See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)). Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies

---

[1] The date from the third level response is illegible on the copy the court received. However, the first level response from the same inmate appeal is dated March 23, 2007. Therefore the court can conclude the third level response, which exhausts the inmate appeal, was issued sometime after March 23, 2007.

4

while the lawsuit is pending. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). The Supreme Court recently addressed the exhaustion requirement in Jones v. Bock, 549 U.S. 199 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted.

The Supreme Court also held in Woodford v. Ngo that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules so that the agency addresses the issues on the merits. 548 U.S. 81, 89-96 (2006). Thus, exhaustion requires compliance with "deadlines and other critical procedural rules." Id. at 90. Partial compliance is not enough. See id. Substantively, the prisoner must submit a grievance which affords prison officials a full and fair opportunity to address the prisoner's claims. See id. at 90, 93. The Supreme Court noted that one of the results of proper exhaustion is to reduce the quantity of prisoner suits "because some prisoners are successful in the administrative process, and others are persuaded by the proceedings not to file an action in federal court." Id. at 94.

A prison inmate in California satisfies the administrative exhaustion requirement by following the procedures set forth in §§ 3084.1-3084.7 of Title 15 of the California Code of Regulations. In California, inmates "may appeal any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). These regulations require the prisoner to proceed through several levels of appeal: (1) informal resolution; (2) formal appeal; (3) second level appeal to institution head; (4) third level appeal to the director of the California Department of Corrections and Rehabilitation. A decision at the third formal level, which is also referred to as the director's

level, is not appealable and concludes a prisoner's departmental administrative remedy. See Cal. Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2). Departmental appeals coordinators may summarily reject a prisoner's untimely administrative appeal. See Cal. Code Regs. tit. 15, §§ 3084.3(c)(6) and 3084.6(c). If a group of inmates intend to appeal the same decision or action, one grievance form is used and a list of the participating inmates must be attached. The list must be legible and state the inmates' names, departmental identification numbers, and housing assignment. The form must also be signed by all participating inmates. Currently, California regulations do not contain any provision specifying who must be named in the grievance.

In certain circumstances, the regulations make it impossible for the inmate to pursue a grievance through the entire grievance process. See Brown v. Valoff, 422 F.3d 926, 939 n. 11 (9th Cir. 2005). Where a claim contained in an inmate's grievance is characterized by prison officials as a "staff complaint" and processed through a separate confidential process, prison officials lose any authority to act on the subject of the grievance. See id. at 937 (citing Booth, 532 U.S. at 736 n. 4). Thus, the claim is exhausted when it is characterized as a "staff complaint." See id. at 940. If there are separate claims in the same grievance for which further administrative review could provide relief, prison regulations require that the prisoner be notified that such claims must be appealed separately. See id. at 939. The court may presume that the absence of such a notice indicates that the grievance did not present any claims which could be appealed separate from the confidential "staff complaint" process. See id.

Here, Defendants have alleged Plaintiff failed to exhaust his administrative remedies prior to filing this action. To support this argument, they provided the court with copies of the inmate grievances he filed which address his claim that he is not receiving his insulin. Plaintiff filed several inmate grievances regarding the lack of insulin, and the need to choose between insulin and food. However, the only inmate grievance pursued through the third and final level was not exhausted until sometime after this case was initiated. Plaintiff does not contradict this. His argument that no inmate grievance is ever granted is irrelevant to whether he

exhausted his administrative remedies. It is not required that his inmate grievance be granted. All that is required is that he pursue all available administrative remedies prior to filing legal action. It does not appear that Plaintiff did so prior to filing this action. While he may have exhausted his administrative remedies after bringing this action, that is insufficient to meet the exhaustion requirements of 42 U.S.C. § 1997e(a) . See McKinney, 311 F.3d at 1199.

The undersigned, therefore, finds Plaintiff failed to exhaust his administrative remedies prior to initiating this action. The complaint, therefore, should be dismissed without prejudice.

### B. FAILURE TO STATE A CLAIM

Defendants also argue Plaintiff's complaint fails to state a claim as to medical indifference and retaliation claims, as well as any claim against defendant Anderson.

1. <u>Medical Indifference</u>

Plaintiff claims the defendants are not allowing him to receive his necessary insulin shots, and are making him choose between receiving insulin or food because the lines are too long for him to have time to receive both. Defendants argue he has not stated a claim because he has not claimed deliberate indifference and there are safety and security concerns which negate any deliberate indifference claims. In addition, Plaintiff fails to allege any actual injury.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy,

801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also

demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Here, Plaintiff claims he is a diabetic and requires insulin shots twice a day, per doctor's orders.  However, he is regularly denied that medication.  Defendants argue the only time Plaintiff has not received his insulin is when he refuses it.  Plaintiff responds that the only time he has refused his insulin is when the lines are too long and he does not have sufficient time to receive both insulin and food, and receiving just insulin could be medically dangerous.

The undersigned finds Plaintiff's allegations for medical deliberate indifference are sufficient to survive a motion to dismiss.  Plaintiff claims that he is unable to receive both insulin and food within the time allowed by the defendants is facially plausible based on reasonable inferences.  See Iqbal, 129 S. Ct. at 1949.  The undersigned cannot say that plaintiff could prove no set of facts entitling him to relief.  Weighing a motion to dismiss, the question is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer, 416 U.S. at 236; see also Hydrick v. Hunter, 500 F.3d 978, 985 (9th Cir. 2007).  Therefore, had this claim been properly exhausted, the undersigned would recommend that the motion to dismiss based on failure to state a claim for medical indifference be denied.

2. Retaliation

Defendants argue that Plaintiff fails to state a claim for retaliation because he has not alleged any harm, and there is no allegation that Defendants' actions in any way "chilled" Plaintiff's First Amendment rights as he continued to contact the Prison Law Office and file inmate grievances.  Plaintiff does not address this issue in his opposition to the motion.

In order to state a claim under 42 U.S.C. § 1983 for retaliation, a prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

As to the chilling effect, the Ninth Circuit in Rhodes observed: "If Rhodes had not alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm that is more than minimal will almost always have a chilling effect." Id. at n.11. By way of example, the court cited Pratt in which a retaliation claim had been decided without discussing chilling. See id. This citation is somewhat confusing in that the court in Pratt had no reason to discuss chilling because it concluded that the plaintiff could not prove the absence of legitimate penological interests. See Pratt, 65 F.3d at 808-09. Nonetheless, while the court has clearly stated that one of the "basic elements" of a First Amendment retaliation claim is that the adverse action "chilled the inmates exercise of his First Amendment rights," id. at 567-68, see also Resnick, 213 F.3d at 449, the comment in Rhodes at footnote 11 suggests that adverse action which is more than minimal satisfies this element. Thus, if this reading of Rhodes is correct, the

chilling effect element is essentially subsumed by adverse action.

Here, Plaintiff has not alleged any chilling effect or adverse action as a result of filing inmate grievances to obtain his necessary medication. His retaliation claims are vague. He states in his complaint that the defendants "would NOT release insulin to dependent minority inmates BECAUSE of Alison Hardy's visits, inspection tour and 602's filed!!!" (Compl., Doc. 14, at 16). However, as Defendants argue, there is nothing in the complaint which could be construed as an allegation that this alleged retaliation had any chilling effect on his right to file his inmate grievances or to suggest adverse action resulted therefrom. To the extent Plaintiff claims he was denied insulin in retaliation, he fails to sufficiently state his claim. His complaint alleges Defendants failed to provide Plaintiff insulin prior to any of his allegations regarding retaliation. If he was denied insulin prior to being retaliated against, it is difficult to understand his claim regarding retaliation. He also alleges he continued to file inmate grievances, which would contradict any claim that the retaliation has chilled his ability to exercise his First Amendment rights.

Therefore, the undersigned finds Plaintiff's claims for retaliation are insufficient, and Defendant's motion to dismiss those claims should be granted.

3. <u>Defendant Anderson</u>

Defendant Anderson argues the only claim against him stems from a denial of Plaintiff's inmate grievance, and therefore fails to state a claim. Plaintiff did not address this argument in his opposition.

Prisoners have no stand-alone due process rights related to the administrative grievance process. <u>See</u> <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988); <u>see also</u> <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process). Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process grievances. Numerous district courts in this circuit have reached the same conclusion.

1  See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly
2  process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863
3  (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address
4  grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL
5  29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process
6  a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967
7  (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function
8  properly failed to state a claim under § 1983). Prisoners do, however, retain a First Amendment
9  right to petition the government through the prison grievance process. See Bradley v. Hall, 64
10 F.3d 1276, 1279 (9th Cir. 1995). Therefore, interference with the grievance process may, in
11 certain circumstances, implicate the First Amendment.

Plaintiff's only claim against defendant Anderson is related to Anderson's inmate grievance decision, wherein he found that there was no need for Plaintiff to be released early nor did he have the right to be treated like white Kosher religious diet inmates. Defendants clarified that these issues arose in a denial of one of Plaintiff's inmate grievances. There is nothing in Plaintiff's complaint which the court could find indicating any personal involvement by defendant Anderson, other than the denial of his inmate grievance. Denying a grievance is insufficient to give rise to federal civil rights violation. Thus, Plaintiff has not stated a claim against defendant Anderson, and defendant Anderson should be dismissed from this action.

### C.  **PLATA**

Defendants next claim that Plaintiff's requests for injunctive relief are subsumed by his status as a class member in the Plata case. Plaintiff again does not address this issue in his opposition. Plaintiff's complaint includes a request for injunctive relief in the form of a court order requiring all insulin dependent diabetics be released at 6:00 a.m. and 5:30 p.m. for their insulin treatment.

///

Defendants cites to other Eastern District cases wherein the court found inmates with serious medical conditions seeking injunctive relief related to their medical condition could not bring an individual action due to their class membership standing. See e.g., Meyer v. Schwarzenegger, No. 06-2584-LKK-GGH (E.D. Cal.).[2]

The undersigned finds this argument persuasive. Defendants acknowledge Plaintiff has a serous medical condition, diabetes, and is complaining about the treatment he is receiving.[3] Plaintiff does not argue in response that he is not included as a class member in Plata. It therefore appears to the undersigned any claim for injunctive relief Plaintiff may have would fall under the class action in Plata, and any claim herein should be dismissed.

### D. ELEVENTH AMENDMENT

Finally, Defendants argue that any claims against them for actions within their official capacities are barred by the Eleventh Amendment. Plaintiff also does not address this argument in his opposition.

The Eleventh Amendment prohibits federal courts from hearing suits brought against a state both by its own citizens, as well as by citizens of other states. See Brooks v. Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1053 (9th Cir. 1991). This prohibition extends to suits against states themselves, and to suits against state agencies. See Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A state's agency responsible for incarceration and correction of prisoners is a state

---

[2] The court may take judicial notice pursuant to Federal Rule of Evidence 201 of matters of public record. See U.S. v. 14.02 Acres of Land, 530 F.3d 883, 894 (9th Cir. 2008). Thus, this court may take judicial notice of state court records, see Kasey v. Molybdenum Corp. of America, 336 F.2d 560, 563 (9th Cir. 1964), as well as its own records, see Chandler v. U.S., 378 F.2d 906, 909 (9th Cir. 1967).

[3] See Meyers, No. 06-2584, Doc. 35 at 19-22, wherein Magistrate Judge Hollows discusses class membership in Plata, which includes inmates with serious medical needs who claim they are not receiving constitutionally adequate medical care, and finding that class members may bring actions for monetary damages but not injunctive relief in an individual action.

agency for purposes of the Eleventh Amendment. See Alabama v. Pugh, 438 U.S. 781, 782 (1978) (per curiam); Hale v. Arizona, 993 F.2d 1387, 1398-99 (9th cir. 1993) (en banc).

The Eleventh Amendment also bars actions seeking damages from state officials acting in their official capacities. See Eaglesmith v. Ward, 73 F.3d 857, 859 (9th Cir. 1995); Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992) (per curiam). The Eleventh Amendment does not, however, bar suits against state officials acting in their personal capacities. See id. Under the doctrine of Ex Parte Young, 209 U.S. 123 (1908), the Eleventh Amendment does not bar suits for prospective declaratory or injunctive relief against state officials in their official capacities. See Armstrong v. Wilson, 124 F.3d 1019, 1025 (9th Cir. 1997). The Eleventh Amendment also does not bar suits against cities and counties. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.54 (1978).

To the extent Plaintiff has named any of the individual defendants in their official capacities, such claims would be barred by the Eleventh Amendment and should be dismissed. If Plaintiff had exhausted his administrative remedies, the undersigned would recommend this action continue against the individual defendants in their individual capacities only.

### IV. CONCLUSION

Based on the foregoing, the undersigned recommends that Defendant's motion to dismiss (Doc. 57) be granted for Plaintiff's failure to exhaust his administrative remedies prior to filing this case, and this action be dismissed in its entirety without prejudice. In the alternative, the undersigned recommends the motion to dismiss be denied as to Plaintiff's Eighth Amendment deliberate indifference claims, granted as to Plaintiff's retaliation claims and as to defendant Anderson for failure to state a claim, granted as to Plaintiff's request for injunctive relief, and granted as to any claim against the Defendants in their official capacities.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 20 days after being served with these findings and recommendations, any party may file written

objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 18, 2010

                                           *Craig M. Kellison*
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE